E————. F————. v. G————. H————.

[Filed December 26, 1972.]

*Perry W. Cross, Dennis, Cross, Raisor, Jordan & Marshall,* of Muncie, for appellant.

*David L. Casterline, Casterline & Barnet,* of Muncie, for appellee.

WHITE, J.—In this paternity action the trial court, sitting without a jury, found defendant to be the child's father. He appeals contending that the decision (1) is not supported by sufficient evidence, (2) is contrary to the evidence, and (3) is contrary to law.

While there are some conflicts in the evidence as to peripheral facts, on one of which appellee was impeached (whether she was a virgin prior to her intercourse with appellant) the parties both testified to the central fact that they engaged in sexual intercourse on May 30, 1970, and it is agreed that the child was born 290 days later on March 16, 1971. And, although appellant's counsel characterizes this time span as "an abnormally long time beyond the normal period of ges-

tation", there was no medical evidence to support an inference of abnormality and no evidence that appellee had intercourse with any other man after May 30, 1970. Nor was there any evidence that appellee had had intercourse with anyone else after March of 1970. Thus, whether the normal period of human gestation is assumed to be 260-265 days, 270 days, or 280 days, and whether the maximum is 300 or 330 days, there is no evidence that she had intercourse with any other man during the period of probable conception.[1]

We have been cited no case in which a gestation period of 290 days, followed by a living birth, has been held to be a scientific or medical improbability as was a 202 day period held to be in *Beaman* v. *Hedrick* (1970), 146 Ind. App. 404, 255 N.E.2d 828, 20 Ind. Dec. 469. In that case it was said:

> "The human gestation period is neither absolute nor is it controlled by legislative or judicial fiat. Benham v. State ex rel. Richardson (1883), 91 Ind. 82. A particular period of gestation, however, is generally governed by the medical testimony in that particular case. Anno. 104 A.L.R. 84 at 85." (Id., 146 Ind. App. at 407, 255 N.E.2d at 830, 20 Ind. Dec. at 471.)

In the instant case there was no expert or medical testimony as to the outer limits of the time span between conception and living birth. In *O'Brian* v. *State* (1860), 14 Ind. 469, 470, it was said that "most men . . . who have investigated the subject to the extent of reading Buchanan or Gunn's Domestic Medicine, know that, in the course of nature, a child, living and capable of surviving to the ordinary age of man, may be born in seven, and may not be till the expiration of ten months or more, from the cessation of the *cantamenia*, indi-

---

1. See *Beaman* v. *Hedrick* (1970), 146 Ind. App. 404, 408, 255 N.E.2d 828, 830, 20 Ind. Dec. 469, 472. Appellee admitted on cross-examination, in answer to leading questions that she had heard "that the length of time from conception to birth is medically 270 days or commonly known as nine months" and that her doctor computes delivery date by subtracting three months from "the period of fertility which is ordinarily half way between periods" and adding seven to fourteen days, which would have made her expected delivery February 14-16 (which is what her doctor told her) and she was delivered more than a month later.

cating the time of its conception." In *McGoldrick* v. *State* (1927), 87 Ind. App. 175, 177, 155 N.E. 52, 53, it is reported that the attending physician testified to a normal gestation period of "280 days; that the extreme limits within which a child can be fully developed is from 240 to 330 days".

In 1889 the Appellate Court of Illinois said:

> "Medical writers of the highest celebrity and authority agree, and the fact is well established, that pregnancy is a condition which may exceed the nominal limit for its duration; but the actual limit to this excess cannot, in the present state of physiological science, be accurately known. Approximately, its duration may be stated from 260 to 308 days after coition, and the average or usual period as 276 days." *Pike* v. *People* (1889), 34 Ill. App. 112, 113.

In *Franks* v. *State* (1935), 26 Ala. App. 430, 432, 161 So. 549, 550, the court said:

> "In the investigation as to when the child involved in this case was begotten, the time should be extended to at least 301 days from the date of birth."

We suppose "the present state of physiological science" is somewhat more advanced now than it was in 1889, but we doubt that the outer limits of the probable period of gestation can yet be accurately known. But if they are, we are reasonably certain that no limits have been established by physiological scientists which would make a 290 day period of gestation improbable. In any event, appellant offered no medical evidence to controvert the popular belief that a child may be begotten 290 days prior to its normal live birth.

The memorandum to appellant's motion to correct errors told the trial court that "plaintiff's evidence [she was her only witness] shows such inconsistencies as to be unbelievable", and he has argued here that it does not constitute substantial evidence of probative value sufficient to sustain the finding of paternity. We have carefully read the entire transcript of the evidence and can understand counsel's doubts as to her testimonial veracity. But if

we were to do what only the trial court had the right to do,[2] that is, to disregard her testimony entirely, there would remain appellant's own testimony that, "I had intercourse with her on May the 30th, had intercourse twice within an hour and fifteen minutes." Absent evidence of her having had intercourse with others during the probable period of conception, the quoted testimony not only sustains a finding that he is the child's father but virtually demands it.

Judgment affirmed.

Buchanan, P.J., and Sullivan, J., concur.

NOTE BY THE COURT: Persons involved in juvenile court proceedings, particularly innocent children, are protected at the trial level, "within the discretion of the trial judge", from embarrassing and prejudically harmful publicity by section 15 of the juvenile court act (Ind. Ann. Stat. § 9-3215 [Burns 1972 Supp.], IC 1971, 31-5-7-15). To the extent possible the same protection should also be extended on the appellate level. We therefore direct that the clerk of this court withhold from public examination the record (transcript), briefs, and other papers in this case. Copies of this opinion should be mailed to court and counsel in the usual manner but all copies made available to the press and public should bear fictitious names for the parties, such as E———. F———., defendant-appellant, v. G———. H———., planitiff-appellee, and should carry no number. The official reporter of this court, all unofficial reporters, all news media representatives, counsel, and the parties are requested to cooperate in preserving the anonymity of the child by not using the true names of the parties in any report of this case, written or oral.

NOTE.—Reported at 290 N.E.2d 795.

2. *Salazar* v. *Senior* (1972), 151 Ind. App. 144, 278 N.E.2d 332, 337, 29 Ind. Dec. 183, 191.