This is an unusual divorce case complicated by an issue of paternity which involves the presumption that a child born during a marriage is the legitimate child of that marriage. The cause arose out of the following facts and circumstances:
Jeri Ann Evans, appellee herein, was married to Clayton Harvey Cox in 1974. The couple separated in either December 1975 or January 1976. Cox moved to Texas. Mrs. Evans and Cox testified, he by deposition and she in court, that neither had seen the other since their separation. He visited in Alabama once after his move to Texas, but said he only talked to Mrs. Evans on the telephone. Despite this period of separation, the couple was not divorced until July 1979.
Though the testimony is heavily disputed, Mrs. Evans began a relationship with Charles Leon Evans in the spring or summer of 1976. She testified that she moved in permanently with him in May 1976. This testimony was corroborated by another witness who also lived with Evans at that time. Evans, however, testified that Mrs. Evans did not move in with him permanently until January 1977. He admitted, however, in his deposition, that she spent several nights a week at his home in Prattville "visiting him" prior to that time, and that he had sexual intercourse with her as early as the summer of 1976. Mrs. Evans changed her name from Cox to Evans soon after the relationship began and the parties filed joint income tax returns for 1977, 1978 and 1979.[1]
In June 1977, Mrs. Evans had a baby — a daughter who was named Maria Nicole Evans. Evans took her to the hospital to have the baby, and he paid the bills in connection with the birth. When Mrs. Evans was released with the baby from the hospital, she went home to Evans' house. The child's birth certificate named Evans as the father. At trial, Mrs. Evans testified that she had intercourse with no one but Evans during the critical period when the child was conceived. Evans, however, testified that she dated others while living in his house, and that he found her in bed with one of the young men who lived in the house at one time.
In early 1978, the Evanses and the child moved from Prattville to a house in Grand View Pines in Millbrook. In July 1979, Mrs. Evans was divorced from Cox. She continued thereafter to live with Evans. She left Evans' home with the child in February *Page 256 
1980. Mrs. Evans filed for divorce claiming that she and Evans were married on October 1, 1979, and that one child was born of the marriage, namely Maria, on June 19, 1977. Evans denied these allegations.
After hearing the evidence ore tenus, the court found: (1) that the presumption that Cox was the child's father had been rebutted by clear and convincing evidence and, (2) that the Evanses were common-law married subsequent to the birth, thus legitimating the child. The court divorced the parties, and awarded custody of the child to the mother. Evans was ordered to pay $35 per week as child support, $100 per month for a twenty-four-month period as alimony in gross and $1,200 attorney's fees. The wife was awarded the automobile in her possession. The home in Millbrook and a lot in Deatsville, owned jointly by the parties, were ordered sold and the equity divided equally. The husband was ordered to make any payments connected with the property until it sold. All other personal property of the parties was awarded to the husband. The husband's motion for new trial was denied. He appeals.
On appeal Evans contends that the trial court erred in:
 (1) finding that the presumption of Mr. Cox's parenthood had been overcome by clear and convincing evidence;
 (2) allowing testimony by Mr. Cox and Mrs. Evans to show that the child born during their marriage was not their legitimate offspring;
 (3) allowing the child's birth certificate into evidence;
 (4) its property division, alimony in gross and attorney's fees to the wife; and
 (5) not admitting into evidence defendant's Exhibit four.
The primary issue is whether the presumption that the husband of the mother at the time of conception is the father of her child was rebutted by clear and convincing evidence. See Curryv. Curry, 402 So.2d 1019 (Ala.Civ.App. 1981). Interwoven within this issue is the question of admissibility of testimony by the mother and her husband (at the time of the child's birth) concerning facts and circumstances surrounding the child's conception. We are of the opinion that it is the law of this state that the mother may testify "to circumstances from which non-access and the impossibility of his [the legal husband's] parenthood may be inferred." Leonard v. Leonard, 360 So.2d 710
(Ala. 1978); Curry, supra. The husband may also testify to such facts and circumstances. The wife may not testify to the ultimate fact of illegitimacy. See Franks v. State, 26 Ala. App. 430,161 So. 549 (1935). We conclude that the testimony of Mrs. Evans and Cox, tending to show his non-access and impossibility of paternity, was admissible.
We further find the judgment of the trial judge, that the presumption of parentage of the husband was overcome, not to be erroneous. He had the distinct advantage of having heard the testimony and having seen the witnesses. See Ingram v. State,364 So.2d 329 (Ala.Civ.App.), cert. denied, 364 So.2d 331 (Ala. 1978).
We note further that a favorable result was reached in that the common-law marriage of the parties served to legitimate the child. There was substantial evidence in the record to support the finding of common-law marriage. There was testimony, though disputed, that the parties held themselves out as husband and wife, bought property together and filed joint tax returns. It thus may be said that the testimony of the mother was to legitimate her child, rather than to establish illegitimacy. To reverse the decision of the trial court under the testimony of this case would effectively deny the child any factual knowledge of who her father really is. The legal presumption in the face of the denial of both husband and wife would be of small solace. We do not consider the admittance into evidence of the child's birth certificate to be reversible error. The certificate was merely repetitive of oral testimony. There was other evidence as to non-access and impossibility of parentage of the husband to rebut the common-law presumption. If error, it was not sufficiently prejudicial. *Page 257 
We find no support for appellant's contention that the court erred in reversal in its allowance to the wife of alimony in gross, property division and attorney's fees. Such allowances are in the sound discretion of the trial court and may be reversed only for plain and palpable abuse of that discretion.Mack v. Mack, 402 So.2d 1038 (Ala.Civ.App. 1981). We find no such abuse.
The last issue presented is whether the trial court committed reversible error by its failure to admit defendant's Exhibit four into evidence. Exhibit four was a document signed by Charles Evans, Horace Sandlin and two witnesses, and notarized. According to the document, Mr. Evans borrowed $10,000 from Mr. Sandlin subsequent to the separation and agreed to pay it back upon the sale of the house in Millbrook. Testimony as to the $10,000 debt itself was allowed, but the document was refused when the court sustained an objection to it on the grounds that it was a "self-serving statement." Assuming arguendo that the trial court erred, we are of the opinion that such error was harmless. Appellant has failed to show that such error resulted in substantial prejudice or injury. See Southern Haulers, Inc.v. Martin, 382 So.2d 491 (Ala. 1980); Kroger Co. v. Puckett,351 So.2d 582 (Ala.Civ.App. 1977).
For the foregoing reasons, this cause is due to be affirmed.
AFFIRMED.
BRADLEY and HOLMES, JJ., concur.
[1] Mr. Evans apparently signed Mrs. Evans' name to the 1979 return.