IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

JAMES BAKER,

      Appellant,

 v.                            Case No.  5D15-4139

CARA CATHERINE TUNNEY,

      Appellee.
_____/

Opinion filed October 21, 2016

Appeal from the Circuit Court
for Volusia County,
Kellie J. Miles, Judge.

Allison J. McCabe and Susanne D.
McCabe, of McCabe Law Firm, Port
Orange, for Appellant.

Bradley S. Sherman, Orange City, for
Appellee.

PER CURIAM.

      James Baker ("Father") appeals from the dismissal of his petition for determination of paternity, parental responsibility, child support, and related relief. We reverse because the trial court erroneously concluded that Florida was not the child's home state and that it lacked jurisdiction under the Uniform Child Custody Jurisdiction Enforcement Act ("UCCJEA").

      The parties agree that Baker is the minor child's biological father. The child was born in Florida and lived here until the mother relocated to New York when the child was

less than two weeks old. Both parties filed child custody petitions on the same day: Father filed a petition in Florida, and Cara Tunney ("Mother") filed in New York. Soon afterwards, Father filed a motion for an emergency pick-up order/order to show cause. The trial court issued an order directing Mother to explain "why [she] should not be adjudged in Contempt of this Court for removing the minor child from Florida."

In her response, Mother acknowledged that Baker was the child's biological father, that she previously resided in Florida with Father and the child, and that she took the child and relocated to New York. However, she denied that taking the child to New York was unlawful and asserted that it was necessary under the circumstances and in the best interest of the child. Mother alleged that on two occasions after the child's birth, Father was intoxicated, angry, and threatening. Her mother, who was visiting from New York to help with the newborn, allegedly witnessed the incidents. Mother "decided that we had little choice but to return home to New York where there would be a stable, supportive and protective atmosphere in which to provide for the new-born child."

Mother had also filed an amended petition for temporary custody and placement of the child in Yates County, New York, to which she attached a supporting affidavit reciting essentially the same factual circumstances as in her response to the Florida petition and motion. The New York court issued an order to show cause that directed Father to explain why an order granting temporary custody should not be entered in favor of Mother. The order prohibited the child's removal from New York without court approval and granted Mother temporary placement of the child.

The Florida court held two jurisdictional hearings that telephonically included the New York court. No testimony or evidence was presented at the hearings. Father argued

2

that the child's home state was not at issue because the child was born in Florida, and he was the natural father of the child. Mother responded that New York appropriately exercised emergency jurisdiction over the matter pursuant to Mother's allegations of domestic violence.

The New York court concluded that Florida was initially the home state of the child, but "New York became the home state of the child when the mother and child arrived in New York, leaving the—fleeing the alleged domestic violence and dangerous actions of the father." The Florida court found that the New York court properly exercised jurisdiction under the UCCJEA: "The child is [in New York] at this point. The child's been there for six months. The witness to the conduct, that occurred here, resulting in the child being removed from the state of Florida, is in New York. So it appears to me that New York should be the appropriate state." The court further concluded that Florida never had home state jurisdiction over the child because there was no adjudication of paternity and no order regarding child custody, although Father had filed with Florida's putative registry. As a result, the Florida court dismissed the Father's petition. This appeal followed.

The UCCJEA governs jurisdiction over child custody matters and is set forth in sections 61.502 through 61.542, Florida Statutes (2015).[1] See Hindle v. Fuith, 33 So. 3d 782, 784 (Fla. 5th DCA 2010). Florida has jurisdiction to make an initial determination about child custody if Florida "is the home state of the child on the date of the commencement of the proceeding." § 61.514(1)(a), Fla. Stat. (2015). "Home state" is defined as:

---

[1] New York has also adopted the UCCJEA in substantially the same format as Florida. See N.Y. Dom. Rel. Law § 76 (McKinney 2015).

3

[T]he state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child custody proceeding. In the case of a child younger than 6 months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

§ 61.503(7), Fla. Stat. (2015) (emphasis added).

The state with home state jurisdiction over the child has priority under the UCCJEA. Hindle, 33 So. 3d at 784 (citing Arjona v. Torres, 941 So. 2d 451, 455 (Fla. 3d DCA 2006)). Jurisdiction extends to making an initial child custody determination only if:

(a) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within 6 months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(b) A court of another state does not have jurisdiction under paragraph (a), or a court of the home state of the child has declined to exercise jurisdiction on the grounds that this state is the more appropriate forum under s. 61.520 or s. 61.521, and:

1. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

2. Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(c) All courts having jurisdiction under paragraph (a) or paragraph (b) have declined to exercise jurisdiction on the grounds that a court of this state is the more appropriate forum to determine the custody of the child . . . ; or

(d) No court of any other state would have jurisdiction under the criteria specified in paragraph (a), paragraph (b), or paragraph (c).

4

§ 61.514(1)(a)-(d), Fla. Stat. (2015).

As a preliminary matter, Mother argues that Father is not a "parent" under the UCCJEA because his paternity was never legally established, and he presented no evidence that he was anything more than the biological father of the child. She contends that to qualify as a "parent" in Florida, the father must be adjudicated the biological parent pursuant to section 742.10, Florida Statutes (2015), or the parties must have filed a paternity acknowledgement agreement pursuant to section 382.013(2)(c), Florida Statutes (2015). Mother also asserts that the statute defining natural guardians applies to this case, which provides, in relevant part, that:

> (1) The parents jointly are the natural guardians of their own children and of their adopted children, during minority, unless the parents' parental rights have been terminated pursuant to chapter 39. . . . The mother of a child born out of wedlock is the natural guardian of the child and is entitled to primary residential care and custody of the child unless the court enters an order stating otherwise.

§ 744.301, Fla. Stat. (2015) (emphasis added).

Father contends that the circuit court erred in ruling that Florida was never the child's home state solely because the child was in Florida for only eleven days and paternity was never established via court order. He argues that under the UCCJEA, the fact that the child was born out of wedlock has no bearing on the child's home state, and the plain language of the statute indicates that Florida is the child's home state. We agree.

Applying section 744.301 to proceedings under the UCCJEA would exclude both putative fathers and children born out of wedlock from the jurisdictional protections provided in the statute. While the UCCJEA does not specifically define "parent," the definition of "person acting as a parent" includes a person other than a "parent" who

5

"claims a right to a child-custody determination under the laws of this state." § 61.503(13)(a)-(b), Fla. Stat. (2015) (emphasis added).

Moreover, many courts have recognized that, under the UCCJEA and its prior versions, a putative father's rights may be akin to those of a father of a child born to a marriage. See, e.g., Slay v. Calhoun, 772 S.E.2d 425, 430 (Ga. Ct. App. 2015) (concluding that Georgia had home state jurisdiction over minor child who lived in Georgia with putative father because putative father was person acting as child's parent); Matter of Paternity of R.L.W., 643 N.E.2d 367, 369 (Ind. Ct. App. 1994) (rejecting argument that father was not "parent" for consideration under prior version of UCCJEA because he was merely the putative father, noting that mother was attempting to use the statute "as a shield for her 'seize and run' strategy"); In re Estate of Patterson, 652 S.W.2d 252, 256 (Mo. Ct. App. 1983) (holding unwed father's rights under UCCJA "should not be foreclosed solely because he was not married to their mother").

Here, the parties agree that Father and Mother cohabitated during the pregnancy. They also signed a lease together before the child was born. Father was present for the child's birth, and both Father and Mother are listed on the child's birth certificate. Father also filed a claim with Florida's putative father registry, and Mother acknowledges that he is the biological father of the child. Thus, Father qualifies as a "parent" or "person acting as a parent" under the statute.

Florida was the child's home state at the time of the filing of the competing petitions because from birth to relocation, the child lived in Florida with both Father and Mother. The child was less than six months old, and the child's home state is where the child lived from birth with a parent or person acting as a parent. See § 61.503(7), Fla. Stat. (2015);

Fleckles v. Diamond, 35 N.E.3d 176, 189 (Ill. App. Ct. 2015) (noting that the "UCCJEA gives priority to the jurisdiction of the child's 'home state,' which for a child less than six months old is defined as the birth state" (citation omitted)). In its order, the circuit court dismissed the petition solely based on its finding that Florida never had home state jurisdiction over the child. That was error.

This conclusion does not mean that New York improperly exercised jurisdiction. The New York court based its decision on the emergency jurisdiction provisions of the UCCJEA. See N.Y. Dom. Rel. Law § 76-c (McKinney 2015). The statute provides that New York could properly exercise temporary jurisdiction "if the child is present in the state . . . [and] it is necessary in an emergency to protect the child, a sibling or parent of the child." Id. The Florida and New York courts in this case consulted and agreed to allow New York to exercise temporary jurisdiction based upon Mother's allegations of domestic violence. Yet, while New York arguably could have exercised temporary emergency jurisdiction, it did not become the child's home state simply because Mother filed a child custody petition in New York. Father filed a custody petition in Florida, the child's home state, which precluded New York from exercising permanent jurisdiction in this case. See § 61.517, Fla. Stat. (2015); N.Y. Dom. Rel. Law 76-c (McKinney 2015). Absent Florida expressly relinquishing its jurisdiction to New York, both the dismissal under review and New York's assumption of home state jurisdiction were improper.

We reverse and remand to the circuit court to consider Father's child custody pleadings on the merits. Unless Florida relinquishes its jurisdiction to New York, Florida remains the child's home state. See §§ 61.514, 61.520, Fla. Stat. (2015). Accordingly,

Florida retains exclusive jurisdiction to enter permanent custody decrees in this case.[2]

See Steckler v. Steckler, 921 So. 2d 740, 744-45 (Fla. 5th DCA 2006) (citing Yurgel v. Yurgel, 572 So. 2d 1327, 1332, (Fla. 1990)).

REVERSED and REMANDED.

TORPY, COHEN and WALLIS, JJ., concur.

---

[2] Upon exercising home state jurisdiction over the child on remand, the trial court must also comply with the requirements of Florida's emergency jurisdiction statute. Because New York could properly exercise temporary emergency jurisdiction in this case, further communication between the courts will be necessary "to resolve the emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order." See § 61.5174, Fla. Stat. (2015).