# Third District Court of Appeal

## State of Florida

Opinion filed March 23, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2420
Lower Tribunal No. 21-15251
_____

**K.D.,**
Appellant,

vs.

**In re: In the Interest of P.P., R.P., and L.P.,**
Appellee.


An appeal from the Circuit Court for Miami-Dade County, Michelle Alvarez Barakat, Judge.

Law Office of Kelly D. Feig, P.A., and Kelly D. Feig (Hallandale Beach), for appellant.

Kevin G. Thomas, for appellee T.P., the mother.


Before SCALES, MILLER, and BOKOR, JJ.


MILLER, J.

Appellant, K.D., the aunt, challenges a final order dismissing her private dependency petition for lack of jurisdiction. Concluding the trial court is authorized to exercise jurisdiction under two independent provisions of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), as codified in sections 61.501 et seq., Florida Statutes (2022), we reverse and remand for further proceedings.

## BACKGROUND

After the children traveled from Ohio to Florida to join their maternal aunt for a vacation, they disclosed they had suffered extreme emotional and physical abuse at the hands of their mother and her live-in girlfriend. Fearing for their safety, the aunt refused to return the children to the mother, and instead, approximately two months after their arrival in the state, petitioned the family court for extended family custody pursuant to chapter 751 of the Florida Statutes (2022). The family court temporarily awarded the aunt legal custody and authorized her to enroll the children in school, manage medical care, and obtain copies of birth certificates, report cards, insurance cards, immunization records, social security cards, and social services records.

This arrangement continued for more than six months, and the aunt then filed dependency and shelter petitions. Two days after the petitions were filed, the dependency court convened an emergency shelter hearing.

2

The court continued the hearing, however, upon learning the mother had not been afforded proper notice.

Approximately eight days later, the family court rendered an order dismissing the aunt's extended family petition. In the order of dismissal, the family court found that because the children were merely visiting Florida at the time the petition was filed, the aunt failed to demonstrate she was an "extended family member who is caring full time for the child[ren] in the role of a substitute parent and with whom the child[ren] [are] presently living." § 751.02(1)(b), Fla. Stat. Thus, she lacked standing to pursue the petition. The family court further ordered that the children be reunified with their mother within seven days.

The dependency court subsequently reconvened the shelter hearing. At the conclusion of the hearing, the court rendered a finding that the children had been choked and tortured and struck with various household objects, including belts, telephone cords, and shoes, by the mother and her girlfriend, and awarded the aunt temporary custody. These findings were purportedly substantiated by the testimony of the eldest child, along with a guardian ad litem report and text message exchanges between the mother and the eldest child.

The court then set the dependency petition for trial, but on the eve of trial, the mother filed a motion to dismiss. After convening a hearing on the motion, the court found that the factual findings embodied within the family court order precluded a finding of jurisdiction. The instant appeal ensued.

**STANDARD OF REVIEW**

Where the facts are not in dispute, subject matter jurisdiction under the UCCJEA implicates a pure question of law, and we apply a de novo standard of review. See Miller v. Mitchell, 328 So. 3d 1067, 1069 (Fla. 3d DCA 2021). Factual findings involving jurisdictional determinations, however, are reviewed for competent, substantial evidence. See Martinez v. Lebron, 284 So. 3d 1146, 1149 (Fla. 5th DCA 2019).

**ANALYSIS**

"Subject matter jurisdiction—the 'power of the trial court to deal with a class of cases to which a particular case belongs'—is conferred upon a court by constitution or by statute." Strommen v. Strommen, 927 So. 2d 176, 179 (Fla. 2d DCA 2006) (quoting Cunningham v. Standard Guar. Ins. Co., 630 So. 2d 179, 181 (Fla. 1994)). In the realm of child custody disputes, a court's exercise of subject matter jurisdiction is guided by the UCCJEA, a uniform law that has been adopted in some iteration by all states, with the exception of Massachusetts. See Linda D. Elrod, Child Custody Practice and

4

Procedure § 3:8 (2021).  The UCCJEA strives to avoid jurisdictional competition between states, promote cooperation, avoid re-litigation of child custody decrees, and facilitate enforcement of another state's custody decisions.  See § 61.502, Fla. Stat.

In 2002, the Florida Legislature adopted provisions of the UCCJEA, as codified in sections 61.501 et seq., Florida Statutes.  See Steckler v. Steckler, 921 So. 2d 740, 742 n.1 (Fla. 5th DCA 2006).[1]  Pursuant to the initial child custody provision of the UCCJEA, jurisdiction to determine initial custody matters is vested in the "home state" of the child.  See § 61.514(1)(a), Fla. Stat. (2022); Arjona v. Torres, 941 So. 2d 451, 454 (Fla. 3d DCA 2006).  "Home state" is statutorily defined as "the state in which a child lived with a parent or a person acting as a parent for at least [six] consecutive months immediately before the commencement of a child custody proceeding."  § 61.503(7), Fla. Stat.[2]  In computing the requisite six-month period, "[a] temporary absence of [a parent or person acting as a parent] is part of the period."  Id.; Ohio Rev. Code Ann. § 3127.01(7) (West 2022).

---

[1] Ohio's version of the UCCJEA is codified in section 3127.15 of the Ohio Code.

[2] The Ohio statute contains an identical definition.  See Ohio Rev. Code Ann. § 3127.01(7) (West 2022).

In this context, "a person acting as a parent" is statutorily defined as one who:

(a) Has physical custody of the child or has had physical custody for a period of [six] consecutive months, including any temporary absence, within [one] year immediately before the commencement of a child custody proceeding; and
(b) Has been awarded a child-custody determination by a court or claims a right to a child-custody determination under the laws of this state.

§ 61.503(13), Fla. Stat.; Ohio Rev. Code Ann. § 3127.01(13) (West 2022).

"The state with home state jurisdiction over the child has [jurisdictional] priority under the UCCJEA." Baker v. Tunney, 201 So. 3d 1235, 1237 (Fla. 5th DCA 2016); see § 61.514(1)(a), Fla. Stat. There are, however, two narrowly crafted exceptions to this general rule. The first is that where "no state has 'home state' jurisdiction and the child, the child's parents, or the child and at least one contestant have a significant connection with Florida and there is substantial evidence concerning the child's present or future care, protection, and personal relationships in Florida," the courts of this state may also exercise jurisdiction. Florida Bar, Florida Juvenile Law and Practice § 11.2(C) (16th ed. 2020); see § 61.514(1)(b), Fla. Stat. The second is that all courts are empowered to exercise temporary emergency jurisdiction. Exercise of this jurisdiction is proper "if the child is present in [the] state and the child has been abandoned or it is necessary in an

6

emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." § 61.517(1), Fla. Stat.

Regarding the latter exception, section 61.517(2), Florida Statutes, further provides:

> If there is no previous child custody determination that is entitled to be enforced under this part, and a child custody proceeding has not been commenced in a court of a state having jurisdiction under ss. 61.514–61.516, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under ss. 61.514–61.516. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under ss. 61.514–61.516, a child custody determination made under this section becomes a final determination if it so provides and this state becomes the home state of the child.

By this plain language, a child custody determination made pursuant to the court's temporary emergency jurisdiction continues in force until someone— anyone—obtains an order of the home state court declining or assuming jurisdiction.

In the instant case, the predicates for temporary emergency jurisdiction were met when the dependency court sheltered the children upon a finding of abuse, and those circumstances remain unchanged. The children are present in the state, and, because the shelter judge substantiated the

7

allegations of violence, reunification with the mother indubitably presents an immediate risk of danger to the children.

Although the abuse occurred predominantly in Ohio and South Carolina, this court has previously determined that abuse perpetrated outside of Florida is sufficient to invoke the temporary emergency jurisdiction of the courts of this state. In K.H. v. Department of Children & Family Services, 846 So. 2d 544 (Fla. 3d DCA 2003), a family with "absolutely no connection to the State of Florida was divested of three children" after they were intercepted by the Department of Children and Families at Miami International Airport while traveling from Brazil to the District of Columbia. Id. at 545. Due to allegations of abuse reported to have occurred on United States embassy property in Brazil, dependency proceedings were convened in Florida and the children were placed in foster care. Id. at 546. Although acknowledging serious concerns over jurisdiction, this court found the trial court had temporary emergency jurisdiction pursuant to section 61.517(1), Florida Statutes, and section 39.013(2), Florida Statutes. Id. at 546–47. In accord with this precedent, and in the absence of parallel proceedings in Ohio or any other State, we conclude the dependency court maintains continuing temporary emergency jurisdiction.

We next consider whether the dependency court possessed home state jurisdiction. By the time the dependency petition was filed, the children had been living legally in the custody of their aunt for more than six months. The mother eschews the contention that these facts, standing alone, are sufficient to establish home state jurisdiction. Instead, she argues that the dismissal of the extended family petition has a preclusive effect on any exercise of jurisdiction by the dependency court. This argument misses the mark.

Jurisdiction under the UCCJEA is assessed at the inception of the case. Here, the aunt filed her extended family petition less than two months after the children arrived in Florida. At that time, the children were mere visitors in the state and still in the legal custody of their mother. Consequently, the children had not been residing with "a person acting as a parent" in Florida for six months, as required to justify an exercise of home state jurisdiction.

Exercising temporary emergency jurisdiction, however, the family court awarded physical custody of the children to the aunt. Because the aunt had court-ordered physical custody, her status changed to that of "a person acting as a parent" under the UCCJEA. Thus, Florida ripened into the home state of the children at the six-month mark.

9

The aunt did not file the dependency petition until the six-month mark passed. Accordingly, the dependency court was authorized to exercise home state jurisdiction.

The factual findings reflected in the extended family petition dismissal do not vary this conclusion. While jurisdiction under the UCCJEA is a prerequisite to all child custody determinations, as aptly observed by the family court judge, chapter 751 of the Florida Statutes imposes additional hurdles for nonconsensual petitions for extended family custody. Specifically, section 751.02(1)(b), Florida Statutes, limits such petitions to an "extended family member who is caring full time for the child in the role of a substitute parent and with whom the child is presently living." This particular standing requirement, like jurisdiction, is assessed from the filing of the petition.

Here, the same facts that doomed the jurisdictional aspects of the extended family petition necessitated dismissal. As previously discussed, at the time the aunt filed the petition, she was not caring for the children in the role of substitute parent. Further, the children were not living with her. Rather, she acted as hostess, and the children were mere visitors. Consequently, the aunt lacked standing to pursue her petition.

10

These facts may not be viewed as static. Instead, the events occurring in the six months preceding the filing of the dependency case are controlling. Thus, there is no overlap in analysis.

Finally, the safety of children in our state is of paramount concern. See § 39.001(b)1., Fla. Stat. ("The health and safety of the children served shall be of paramount concern."). Consistent with this prerogative, the Florida Legislature has mandated that dependency court orders "take precedence over other orders affecting the placement of, access to, parental time with, adoption of, or parental rights and responsibilities for the same minor child or children, unless the jurisdiction of the dependency court has been terminated," Fla. R. Juv. P. 8.260(d), and upon filing of the dependency petition, the dependency court is vested with exclusive original jurisdiction until it chooses to relinquish jurisdiction or the child reaches the age of eighteen. See § 39.013(2) ("Jurisdiction attaches when the initial shelter petition, dependency petition, or termination of parental rights petition . . . is filed or when a child is taken into the custody of the department."); § 39.013(4), Fla. Stat. ("Orders entered pursuant to this chapter which affect the placement of, access to, parental time with, adoption of, or parental rights and responsibilities for a minor child shall take precedence over other orders entered in civil actions or proceedings."). Relying upon these principles, the

11

courts of this state have been reluctant to apply claim preclusion in the dependency arena. See Stefanos v. Rivera-Berrios, 673 So. 2d 12, 13 (Fla. 1996); see also Green v. State, Dep't of Health & Rehab. Servs., Soc. & Econ. Servs. Program, 412 So. 2d 413, 414 (Fla. 3d DCA 1982); State, Dep't of Revenue, Off. of Child Support Enf't ex rel. D.J.N. v. Redding, 685 So. 2d 1000, 1002 (Fla. 3d DCA 1997). We need not probe the rationale advanced in this body of law today, however, as to the extent there is a conflict between custody rulings, those by the dependency court prevail.

Accordingly, we conclude the lower tribunal erred in finding it lacked jurisdiction to adjudicate the dependency dispute. The court was authorized to exercise both temporary emergency and home state jurisdiction. We therefore reverse and remand for further proceedings.

Reversed and remanded.